UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LILIANA SANTIAGO, | ) |
| Plaintiff, | ) Case No. 14-cv-10260 |
| v. | ) Judge Sharon Johnson Coleman |
| DR. VIREN PATEL, DMD, DOWNTOWN DENTAL, LLC, and JACQUELINE SAUCEDA, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Liliana Santiago ("Santiago") filed a six count complaint against defendants Dr. Viren Patel, DMD ("Patel"), Downtown Dental, LLC ("Downtown Dental"), and Jacqueline Sauceda ("Sauceda"), alleging gender discrimination (Count I), sexual harassment (Count II), national origin and ethnicity discrimination (Count III), and retaliation (Count IV) in violation of Title VII of the Civil Rights Act of 1991, as well as state law claims for assault (Count V) and intentional infliction of emotional distress (Count VI). Defendants move to dismiss Patel from counts I–IV and to dismiss counts V and VI for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion is granted in part and denied in part.

**Background**

The following factual allegations are taken from the Complaint and are accepted as true for the purposes of ruling on the instant motion. Downtown Dental is a dental office owned and operated by Patel, a male dentist. (Dkt. 1 ¶ 6). Jacqueline Sauceda, who is Mexican-American, is Downtown Dental's office manager. (*Id.* ¶¶ 8, 17). Santiago was employed by Downtown Dental since February 2010 as an office assistant and, later, as an insurance coordinator. (*Id.* ¶¶ 10, 12, 15).

1

Throughout her employment, Santiago, who is from Puerto Rico, was supervised by and reported to Sauceda. (*Id.* ¶¶ 9, 16, 18).

Sauceda mocked Santiago's Puerto Rican heritage and made derogatory comments about Puerto Ricans, which other Mexican-American coworkers would echo. (*Id.* ¶¶ 17–20). Sauceda discussed sexual topics with Santiago and commented on Santiago's body, including her "big ass." (*Id.* ¶¶ 21, 25, 26). Sauceda also bragged to Santiago about having sex with Patel. (*Id.* at ¶ 22). She gave Santiago details of the encounters, which sometimes took place in Santiago's office. (*Id.* ¶¶ 23–24).

Santiago heard Patel refer to female patients and employees by derogatory names. (*Id.* ¶ 30). Patel also massaged Santiago's neck, deliberately brushed against her, caressed her, and told her that she was in his "circle of trust." (*Id.* ¶¶ 29–32). Patel arranged weekly trips for all Downtown Dental employees to the Tilted Kilt, a local bar with provocatively dressed servers. (*Id.* ¶ 35). On one occasion, Patel invited Santiago, Sauceda, and another female employee to go on a "no spouses" trip to Las Vegas where they would visit clubs at which, he claimed, women wore no underwear. (*Id.* ¶ 33). The trip was subsequently canceled after Santiago refused to attend. (*Id.* ¶ 34).

When Santiago complained to Sauceda about an incident in which Patel "felt her up," Sauceda became "jealous and angry," and punished Santiago by increasing her workload and adding last-minute tasks. (*Id.* ¶¶ 40, 41). On July 29, 2013, Santiago informed Patel that his actions and those of Sauceda were making her uncomfortable. (*Id.* ¶ 43). Sauceda, who overheard this conversation, began screaming at Santiago in Patel's office, ultimately yelling at her to "get the fuck out." (*Id.* ¶¶ 45–47). Santiago left the office and did not return to work. (*Id.* ¶ 49).

On September 23, 2013, Santiago's attorney sent Patel a letter summarizing Santiago's complaint and warning that Santiago would be seeking an EEOC investigation. (*Id.* ¶ 50). On September 27, 2013, at 7:30 A.M., Sauceda appeared at Santiago's home. (*Id.* ¶ 51). Shouting at

2

Santiago and her husband, Sauceda stated that "this is not over," "it's between me and you," and "I will come back with my uncle and cousins." (*Id.* ¶ 53). Santiago reported this incident to the police. (*Id.* ¶ 54).

Downtown Dental also withheld Santiago's final paycheck, blocked her access to her 401K benefits for three months after she left, and thwarted her application for unemployment benefits by falsely reporting that she had been discharged due to a dispute with her supervisor. (*Id.* ¶¶ 55-59).

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 1973, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must allege factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). Put differently, Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), *see also* Fed. R. Civ. P. 8(a). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012).

**Discussion**

*1. Title VII Claims*

Defendants contend that Santiago's Title VII claims against Patel must be dismissed because Title VII only provides a right of action against employers and Patel is not an employer. An "employer," under Title VII, is "a person engaged in an industry affecting commerce who has

fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . . ." 42 U.S.C. § 2000e. Liability under Title VII extends only to "employers", and not to individual supervisors or owners. *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995). "[T]he fact that [the defendant] is an alleged owner of the Defendant corporations does not make him liable as an employer under Title VII." *Al Naser v. Creative Designs Mgmt. Co.*, No. 12 C 1997, 2012 WL 3779067, at *5 (N.D. Ill. Aug. 30, 2012) (Kendall, J.).

An individual can be an "employer," however, if their "authority and interests are so aligned with the business as to render them the legal personification of the business." *Smith v. Castaways Family Diner*, 453 F.3d 971, 978 (7th Cir. 2006). Mere control is not enough, rather, it is the source of an individual's authority that weighs on whether he is properly classified as an employer. *Id.* at 938. The Court "must consider whether the individual exercises the authority by right, or whether he exercises it by delegation at the pleasure of others who ultimately do possess the right to control the enterprise." *Id.* at 984. Individuals with inherent authority, such as sole proprietors, shareholders, and directors, are employers, while the managers to whom they delegate control are not. *Id.* Here, Santiago alleges that Patel is her employer, the sole owner of Downtown Dental, and her ultimate supervisor. (Dkt. 1 ¶¶ 6, 9). Under these circumstances and at this stage in the proceedings, Santiago has adequately alleged that Patel is her employer for Title VII purposes.

Alternatively, defendants contend that Santiago's Title VII claims against Patel must be dismissed because he was not named in her EEOC Charge of Discrimination. A plaintiff seeking relief for a violation of Title VII must first exhaust her administrative remedies before she may assert her claims in a lawsuit. *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001). Consequently, a party not named in a plaintiff's EEOC charge generally may not be sued under Title VII. *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989). An exception exists, however, if the plaintiff can show that the unnamed party had notice of the claim against it and had an

4

opportunity to participate in conciliation proceedings aimed at voluntary compliance. *Id.* at 127; *see also Eggleston v. Chi. Journeymen Plumbers' Local Union*, 657 F.2d 890, 906 (7th Cir. 1981) ("[G]iven [Title VII]'s remedial purposes, charges are to be construed with 'utmost liberality' and the parties sufficiently named or alluded to in the factual statement are to be joined."). Here, as the owner and manager of Downtown Dental, Patel cannot plausibly claim that he did not have notice of Santiago's claims, which partially concerned his conduct, or that he was deprived the ability to participate in conciliation proceedings that Downtown Dental took part in. *See id.* at 905 (holding that an unnamed defendant had notice because half of its board of directors were also officers of the named defendant and because the charge concerned the unnamed defendant's conduct). Accordingly, this Court declines to dismiss Santiago's Title VII claims against Patel.

*2. Assault Claim*

Defendants next contend that Santiago's assault claim (Count V) should be dismissed because Sauceda's alleged conduct does not constitute assault as a matter of law. Under Illinois law, assault necessarily involves a reasonable apprehension of an imminent battery. *See Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004) ("Ever since the fourteenth century, assault whether civil or criminal has involved (1) a threatening *gesture*, or an otherwise innocent gesture made threatening by the accompanying words, that (2) creates a reasonable apprehension of an *imminent* battery." (emphasis in original)). "Reasonable apprehension" means a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented. *Parrish by Bowker v. Donahue*, 443 N.E.2d 786, 788, 110 Ill.App.3d 1081, 1083 (1982). "A merely verbal threat of indefinite action in the indefinite future is not an assault." *Kijonka*, 363 F.3d at 647.

Here, Santiago does not adequately allege that she had reason to fear an imminent battery. Sauceda's threat to "come back with my uncle and cousins" clearly conditioned any harm on the presence of Sauceda's relatives. Therefore, Sauceda's threat could not create a reasonable

5

apprehension of imminent battery. Moreover, Santiago does not allege that Sauceda made any physical gesture that created an apprehension of battery during their confrontation. Accordingly, Santiago's allegations do not establish the elements of assault.

*3. Intentional Infliction of Emotional Distress*

Defendants also contend that Santiago's state law claim of intentional infliction of emotional distress (IIED) should be dismissed, either because it fails to state a claim on which relief may be granted or because it is preempted by the Illinois Human Rights Act (IHRA). In the alternative, they also contend that Patel and Downtown Dental should be dismissed from the claim because they are not liable for Sauceda's individual conduct.

Defendants first argue that Santiago's IIED claim should be dismissed because the defendants conduct was not extreme or outrageous. To state a claim for IIED, a plaintiff must adequately allege (1) extreme and outrageous conduct; (2) intent to inflict emotional distress or knowledge of a high probability of causing the same; and (3) causation of severe emotional distress. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2008).

Santiago concedes that the defendants' workplace actions, such as increasing her workload, changing her job duties, writing her up, and temporarily restricting her access to pay and benefits do not constitute outrageous conduct. *Cf. Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001) ("[C]ourts have found extreme and outrageous behavior to exist in the employer/employee context where the employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment."). Here, however, Santiago also alleges that Sauceda engaged in outrageous conduct by showing up at her house, early in the morning and uninvited, to threaten Santiago and her family, after engaging in a course of prior racial and sexual harassment. This Court acknowledges that mere threats ordinarily are insufficient to establish outrageous conduct. *See Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767,

6

66 Ill.2d 85, 89–90 (1976).  Here, however, drawing all favorable inferences for Santiago, the surrounding circumstances that accompanied the threat, including Sauceda's prior treatment of Santiago and the time and place of the threat's delivery, are sufficient to render Sauceda's conduct potentially outrageous in nature.  *See, e.g., Otterbacher v. Northwestern Univ.*, 838 F. Supp. 1256, 1261–62 (N.D. Ill. 1993) (recognizing that the plaintiff's claims that defendant had harassed him and "placed numerous phone calls to his residence which contained vulgar and threatening messages, including a threat to [his] life" adequately pled an IIED claim so as to survive a motion to dismiss); *Class v. New Jersey Life Ins. Co.*, 746 F. Supp. 776, 778 (N.D. Ill. 1990) (finding intentional infliction of emotional distress where the defendant threatened to "get even" with the plaintiff for reporting sexual harassment and engaged in retaliatory conduct facilitating her termination).

In light of case law and the facts of this case, the defendants' contention that a single, isolated act is insufficient to support a finding of IIED as a matter of law does not persuade the Court.  Although a single offensive act *may* be insufficient to establish IIED, such a finding must be based on an analysis of both the intensity and the duration of the conduct and the resulting distress. *See, e.g., Morrison v. Sandell*, 446 N.E.2d 290, 292, 112 Ill.App.3d 1057, 1060 (1983).  Here, the conduct alleged could plausibly be found to be so outrageous that only a single incident would be necessary to establish outrageous conduct, especially in light of the preceding harassment.

Defendants also argue that Santiago's IIED claim should be dismissed because it is preempted by the Illinois Human Rights Act (IHRA).  The IHRA states that "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D).  In deciding if a claim is properly before the court, it must be determined "whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the [IHRA] itself." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23, 177 Ill.2d 511, 517 (1997); *compare Thomas v. Habitat*

*Co.*, 213 F. Supp. 2d 887, 899 (N.D. Ill. 2002) (holding that an IIED claim was preempted where the only outrageous conduct alleged was retaliating against the employee in violation of the duties created by the IHRA) *with Roberts v. County of Cook*, 213 F. Supp. 2d 882, 887 (N.D. Ill. 2002) (holding that the plaintiff's IIED claim remained intact because it did not depend on IHRA's prohibition against sexual discrimination for its survival). Defendants assert that Santiago's IIED claim is based on conduct contravening IHRA's prohibition on retaliating against employees who complain about discrimination or harassment and therefore is preempted. Each of the elements of IIED, however, can be satisfied by Santiago's allegations against Sauceda, without reference to any legal duty created by the IHRA. Accordingly, Santiago's IIED claim is not preempted.

Finally, defendants argue that Patel and Downtown Dental should be dismissed from Santiago's state tort claims because neither can be held vicariously liable for Sauceda's allegedly intentional acts as a matter of law. Under a theory of respondeat superior, an employer can be liable for the negligent, willful, malicious or even criminal acts of its employees when committed within the scope of employment. *Volling v. Antioch Rescue Squad*, 999 F. Supp. 2d 991, 1003–04 (N.D. Ill. 2013) (Tharp, J.). An individual's conduct is within the scope of employment if it is "of the kind he is employed to perform," it "occurs substantially within the authorized time and space limits," and it is "actuated, at least in part, by a purpose to serve the master." *Adames v. Sheahan*, 909 N.E.2d 742, 754–55, 233 Ill.2d 276, 298 (2009).

Here, Santiago plausibly asserts that Sauceda was acting in a manner that she believed would benefit Patel and Downtown Dental. Santiago, however, does not plead any facts supporting a conclusion that Sauceda's conduct was the kind that she was employed to perform, or occurred substantially within the authorized time and space of her employment. Accordingly, Santiago has failed to adequately plead vicarious liability against Patel or Downtown Dental, and both defendants must be dismissed from Count VI.

**Conclusion**

For the foregoing reasons, this Court rules on the defendants' motion to dismiss [14] as follows: Count V is dismissed as to all defendants.  Count VI is dismissed as to Patel and Downtown Dental.  The defendants' motion to dismiss Patel from Counts I–IV is denied.


SO ORDERED.

_____
Sharon Johnson Coleman
United States District Court Judge

DATED:  November 5, 2015